UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PEOPLE OF THE STATE OF CALIFORNIA, EX REL., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF TRANSPORTATION, et al.,<br><br>Defendants. | Case No. 02-cv-04621-KAW<br><br>**ORDER DISCHARGING ORDER TO SHOW CAUSE; ORDER REGARDING DEFENDANTS' MOTION TO DISSOLVE AN INJUNCTION**<br><br>Dkt. No. 75 |
| SIERRA CLUB, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. DEPARTMENT OF TRANSPORTATION, et al.,<br><br>Defendants. | Case No. 02-cv-04623-KAW<br><br>Dkt. No. 69 |

On April 28, 2003, the court issued identical orders permanently enjoining Defendants U.S. Department of Transportation and the Federal Aviation Administration ("FAA"), along with Intervenor-Defendant the Town of Mammoth Lakes ("Town"), "from commencing any construction or other work on the airport expansion project pending conformance with all [National Environmental Policy Act] requirements, including completion and adoption of an Environmental Impact Statement." (Dkt. No. 61 at 20[1].)

On September 18, 2015, Defendants filed motions to dissolve the 2003 injunction in both

---

[1] Unless otherwise noted, all document citations are to *People v. U.S. Dep't of Transp.*, 02-cv-04621. Sierra Club's opposition, however, was filed in *Sierra Club v. U.S. Dep't of Transp.*, 02-cv-04621, ECF No. 77, and was joined by the State of California in the lower numbered case. As a result, the documents filed in connection with the instant motion are identical.

related cases, which pertained to the completion of an environmental impact statement for a formerly proposed expansion project for Mammoth Yosemite Airport ("MMH"). (Defs.' Mot., Dkt. No. 75 at 1.)

On May 19, 2016, the Court held a hearing, and, after careful consideration of the parties' arguments and moving papers, and for the reasons set forth below, the Court GRANTS Defendants' Motions to Dissolve the Injunction.

## I. BACKGROUND

Mammoth Yosemite Airport ("MMH") is part of the FAA's National Plan of Integrated Airport Systems ("NPIAS"), which is a system of airports supported by the federal government to ensure that the country has an adequate number of public-use airports to meet the needs of civil aeronautics and national defense. (Decl. of James W. Lomen, "Lomen Decl.," Dkt. No. 75-1 ¶ 2.) To maintain a safe and efficient nationwide system of public-use airports, the FAA may make project grants for airport development to eligible airport sponsors in the NPIAS under the Airport Improvement Program. (Lomen Decl. ¶ 3.)

Airport sponsors receiving project grants must maintain a current, accurate Airport Layout Plan, a scaled drawing of existing and proposed land and facilities necessary for the operation and development of the airport. (*Id.* ¶ 4.) They must also seek FAA approvals for changes to their layout plans or for federal funds under the Airport Improvement Program. (*Id.* ¶ 5.) The airport sponsor owns and operates the public-use airport and, thus, decides when and where airport development is needed. (*Id.* ¶¶ 8-9.)

Once an airport sponsor submits an Airport Layout Plan, the FAA will review it to determine if it depicts features that are safe and efficient for airport operations and airport use. (*Id.* ¶ 7.) After a conditional approval, the FAA will review the potential environmental impacts of the proposal under the National Environmental Policy Act ("NEPA")[2] and decide whether the project

---

[2] The National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321 et seq., contains additional procedural requirements, the purpose of which is to ensure that the decision-maker will have detailed information on environmental impacts and to provide that information to the public. *Inland Empire Pub. Lands Council v. U.S. Forest Serv.*, 88 F.3d 754, 758 (9th Cir. 1996).

1   fits a categorical exclusion or if an environmental assessment or EIS[3] is required. *Id.* The airport
2   sponsor is not authorized to begin building the proposed project until the FAA completes its
3   review under NEPA. *Id.*
4       In October 2000, the Town proposed a major airport expansion to accommodate scheduled
5   commercial service, including widening and strengthening the runway by 1,200 feet, building a
6   passenger terminal, and adding a parallel and connecting taxiway, aircraft apron, road
7   improvements, automobile and aircraft parking facilities. (Lomen Decl. ¶¶ 10, 15.  Under FAA
8   supervision, the Town prepared a draft environmental assessment to examine the environmental
9   impacts of the project. *Id.*  In December 2000, the FAA approved the final environmental
10  assessment. (*Id.* ¶ 11.)  Later, the FAA issued a Finding of No Significant Impact ("FONSI") for
11  the project. *Id.* ¶ 12.  On July 29, 2002, the FAA issued a Record of Decision unconditionally
12  approving the proposed project and federal financial assistance. *Id.* ¶ 13.
13      In September 2002, Plaintiffs People of the State of California, et al. and Sierra Club, et al.
14  filed separate actions against Defendants, alleging that they had violated NEPA by approving the
15  airport expansion project based on the Final Environmental Assessment and FONSI. Plaintiffs
16  sought an injunction against the expansion project and a requirement that Defendant prepare an
17  EIS.  The Town intervened on the limited issue of remedies. (Dkt. No. 26.)
18      On April 28, 2003, United States Magistrate Judge Bernard Zimmerman issued an order on
19  the motion and cross-motion for summary judgment finding that Defendants' decision not to
20  prepare an EIS was unreasonable and enjoined them from commencing construction or other work
21  for the airport expansion project until an EIS was prepared. (2003 Injunction, Dkt. No. 61 at 20.)
22  The Town requested that the court modify the injunctive relief to allow it to begin the initial phase
23  of the construction before the EIS was completed. (Dkt. No. 66.)  The Court issued a second order
24  that reiterated that no portion of the airport project could start until the EIS was completed and

---

[3] "An agency need not complete an EIS for a particular proposal if it finds, on the basis of a shorter 'environmental assessment' (EA), that the proposed action will not have a significant impact on the environment." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 145 (2010) (quoting 40 CFR §§ 1508.9(a), 1508.13 (2009)).

1 approved. (Dkt. No. 73.)

2 The Town, which was the sponsor for the MMH expansion project, withdrew its proposal

3 to expand the airport in 2005. (Lomen Decl. ¶ 15.) Since that time, the Town has sought to

4 accommodate regional commercial air service without expanding the existing airport facilities. *Id.*

5 In 2008, after preparing an EIS, the FAA approved an operations specifications

6 amendment to allow Horizon Air to provide commercial air service using regional turbo-propeller

7 aircraft. (Lomen Decl. ¶ 16.) In 2010, after preparing an environmental assessment, the FAA

8 approved a United Express operations specifications amendment to provide commercial air service

9 using a regional jet. (*Id.* ¶ 17.)

10 The Town has now submitted an updated Airport Layout Plan to the FAA that proposes a

11 new terminal building area to accommodate up to three regional jets, an aircraft parking apron,

12 automobile parking lots, and road work. (*Id.* ¶¶ 18, 19.) The FAA has conditionally approved the

13 plan contingent on an environmental review under NEPA. (*Id.* ¶ 20.) Defendants contend that the

14 proposed action is not one that would normally require an EIS. (*Id.* ¶ 23.)

15 On September 18, 2015, Defendants filed a motion to dissolve the 2003 Injunction to allow

16 it to proceed with an environmental review of the updated Airport Layout Plan in compliance with

17 NEPA. (Defs.' Mot., Dkt. No. 75.) Thereafter, the related cases were reassigned to the

18 undersigned. Plaintiffs did not file an opposition or notice of non-opposition to the motion, so the

19 Court issued orders to show cause in the related cases prior to dissolving the injunction. (Dkt. No.

20 81.) The parties met and conferred, and the Sierra Club filed a response to the order to show cause

21 and an opposition to the motion to dissolve the junction. Pls.' Resp. to Order to Show Cause &

22 Opp'n to Mot. to Dissolve Inj. ("Pls.' Opp'n"), Sierra Club v. U.S. Dep't of Transp., 02-cv-04623-

23 KAW (N.D. Cal. Jan. 19, 2016), ECF No. 77. The State of California joined in the brief. (Dkt.

24 No. 82.) On February 12, 2016, Defendants filed a reply. (Defs.' Reply, Dkt. No. 87.)

## II.   LEGAL STANDARD

### A.   Relief from Court Order

27 Federal Rule of Civil Procedure 60(b)(5) provides that "the court may relieve a party or its

28 legal representative from a final judgment, order, or proceeding" where "the judgment has been

4

satisfied, released or discharged . . . or applying it prospectively is no longer equitable." The party seeking relief from judgment bears the burden of establishing circumstances that warrant the relief. *Rufo v. Inmates of Suffolk Cty. Jail*, 502 U.S. 367, 383 (1992); *see also Bellevue Manor Assocs. v. United States*, 165 F.3d 1249, 1255 (9th Cir. 1999) ("*Rufo* sets forth a general, flexible standard for all petitions brought under the equity provision of Rule 60(b)(5)."). To meet this burden, the party seeking relief must show a significant change in factual or legal conditions. 502 U.S. at 384. If it does so, a court must then determine whether the requested relief "is suitably tailored to the changed circumstance." *Id.* at 391.

### B. Request for Judicial Notice

A district court may take notice of facts not subject to reasonable dispute that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); *United States v. Bernal–Obeso,* 989 F.2d 331, 333 (9th Cir. 1993). "[A] court may take judicial notice of 'matters of public record.'" *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (citing *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986)). The court need not accept as true allegations that contradict facts which may be judicially noticed. *See Mullis v. United States Bankruptcy Ct.*, 828 F.2d 1385, 1388 (9th Cir. 1987).

### III.   DISCUSSION

### A. Request for Judicial Notice

As a preliminary matter, Plaintiffs asks that the Court take judicial notice of a number of documents in support of their opposition, which are attached to the Declaration of Trent W. Orr. Req. for Judicial Notice ("RJN"), Sierra Club v. U.S. Dep't of Transp., 02-cv-04623-KAW (N.D. Cal. Jan. 19, 2016), ECF No. 77-2. The documents are purportedly true and correct copies of: 1)the Final Environmental Assessment, prepared for the Mammoth Yosemite Airport Expansion Project by the Town of Mammoth Lakes, dated December 2000 (EA), which was approved by the FAA and was the subject of the 2003 Injunction; 2) "Conditional Approval Letter, Dated August 14, 2014" from the FAA to the Town conditionally approving the Town's 2014 Airport Layout Plan; 3) "Council staff report and ACIP," presented to the Town Council of Mammoth Lakes to

seek their approval of the Airport Capital Improvement Plan presented to the Council on January 21, 2015, which was adopted; 4) "Terminal Area Development Plan (January 2015 draft)," prepared for the Town in January 2015; 5) "ALP Update Narrative (January 2015 draft)," which is the Town's January 2015 Airport Layout Plan Update Narrative, describing the current layout plan; 6) E-mail from Davené Walker, U.S. Department of Justice, to Mr. Orr, dated August 21, 2015, concerning the instant motion; and 7) E-mail sent by Mr. Orr to Ms. Walker, dated September 17, 2015, also concerning the instant motion.

A district court may take notice of facts not subject to reasonable dispute that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); *United States v. Bernal–Obeso,* 989 F.2d 331, 333 (9th Cir. 1993).

Exhibits 1 through 5 are government records and public documents, which are not subject to reasonable dispute and are proper subjects of judicial notice. *See Lopez v. Wachovia Mortg.,* No. C 10–01645, 2010 WL 2836823, at *2 (N.D. Cal. 2010) (taking judicial notice of nearly identical documents).

Exhibits 6 and 7 are correspondence between the parties regarding the instant motion. The Court declines to take judicial notice of the emails.

Defendants do not object to the request for judicial notice. (Defs.' Reply at 6 n. 5.)

Accordingly, the Court GRANTS IN PART AND DENIES IN PART Plaintiffs' request for judicial notice and takes judicial notes of Exhibits 1 through 5.

### B. Motion to Dissolve the Injunction

Defendants contend that the injunction should be dissolved due to changes in both factual and legal conditions. (Defs.' Mot. at 1.)

#### i. Change in Factual Conditions

Defendants contend that the rationale for maintaining the 2003 Injunction no longer exists because the Town, as the airport sponsor, withdrew its proposed airport expansion project in 2005. (Defs.' Mot. at 6.) Thus, Defendants argue that "there is no danger of any new injury to Plaintiffs from dissolving the injunction because the new [Airport Layout Plan] for MMH is still subject to

6

new review under NEPA and other applicable laws and regulations." (Defs.' Mot. at 6.) As a result, that process would provide Plaintiffs and the public with notice of NEPA-related documents and provide the public with an opportunity to review and comment on any environmental impacts. *Id.* Lastly, Plaintiffs will have the opportunity to seek judicial review of any final decision. *Id.* In contrast, Defendants argue that leaving the injunction in place causes distinct harm to the FAA and the public because it requires "the agency to devote limited resources to preparing a full EIS for any project that may be considered similar to the original expansion project without regard to whether the impacts of that project are in fact significant." (Defs.' Mot. at 7.) Instead, Defendants argue that the FAA should be permitted to comply with NEPA by preparing an analysis commensurate with the impacts of the proposed action, consistent with the NEPA's implementing regulations and FAA Orders 1050.1F and 5050.4B. *Id.*

In opposition, Plaintiffs argue that the current plan is virtually identical to the enjoined expansion plan, as it contains nine of the twelve components from the original plan, which shows that the Town intends to bring in more and larger aircraft and significant more visitors to the Airport. (Pls.' Opp'n at 8-10.) Plaintiffs further contend that the current plan has additional features, and may pose additional environmental impacts, which makes an EIS even more necessary. (Pls.' Opp'n at 10.) In reply, Defendants clarify that the current project only includes three, rather than nine, components that are similar to the 2000 expansion project, because several of the proposed components were not conditionally approved by the FAA in the Conditional Approval Letter, dated, August 14, 2014. (Defs.' Reply at 6.)

"The bases for injunctive relief are irreparable injury and inadequacy of legal remedies." *Amoco Prod. Co. v. Vill. of Gambell, AK*, 480 U.S. 531, 542, 107 S. Ct. 1396, 1402, 94 L. Ed. 2d 542 (1987). The 2003 injunction enjoined the commencement of "any construction or other work on the airport expansion project pending conformance with all NEPA requirements." (2003 Injunction at 20.) At the time, the presiding judge believed that "the airport expansion project may have serious environmental consequences to the Mammoth Lakes region...," which were not considered by Defendants, so they "must prepare an environmental impact statement in compliance with NEPA." (2003 Injunction at 20.) The injunction, however, is clearly limited to

7

1  the 2000 Plan. (*See* 2003 Injunction at 2.) There is no dispute that NEPA does not unilaterally
2  require an environmental impact statement for all projects. Plaintiffs' grievance, however, is that
3  the current plan is similar to the original plan. At the hearing, Plaintiffs explained that they
4  wanted the injunction to remain in place, because they believe that the current plan is essentially
5  the 2000 expansion project broken up into smaller component parts. And, as a result, Plaintiffs
6  anticipate that Defendants will violate NEPA. The court, however, cannot presume that the
7  Agency will violate the law, rendering it improper to maintain an injunction as a "prophylactic
8  measure" to guard against a new and different agency action taken in accordance with the
9  procedures established by law. *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 160-61
10 (2010)(permanent injunction issued prior to agency action was premature). Here, the current plan
11 is required to comply with NEPA, and the consequence of not dissolving the injunction would be
12 to require an EIS for any construction work, including for projects that may not otherwise be
13 required to by statute. This is an inequitable result.

14 Furthermore, the dissolution does not preclude judicial review. As Defendants' correctly
15 point out, "[w]here the agency makes a new decision, plaintiffs must present new claims through a
16 new action." *Monsanto*, 561 U.S. at 162; *see also* Administrative Procedure Act of 1946, 5 U.S.C.
17 §§ 701-706. Indeed, if Plaintiffs are not satisfied with the current plan's administrative process,
18 they can file a petition with the Court of Appeals. *See* 49 U.S.C. § 46110(a).

19 Accordingly, the imposition of the 2003 Injunction is no longer equitable due to a change
20 in the factual conditions created by the withdrawal of the original plan and warrants the
21 dissolution of the injunction.

### ii. Change in Legal Conditions

23 Defendants contend that the statute governing judicial review for this kind of challenge
24 was amended after the case was filed, and the injunction issued, warrants lifting the injunction.
25 (Defs.' Mot. at 8.) Specifically, effective December 12, 2003, jurisdiction for review of all orders
26 issued by the Administrator of the FAA, pertaining to 49 U.S.C Part B—Airport Development and
27 Noise, now lies in the United States Court of Appeals. *Id.* (citing 49 U.S.C. § 46110(a)). Thus, if a
28 NEPA challenge to the instant action were filed today, it would not be filed in the district court.

8

(Defs.' Mot. at 8.)

Plaintiffs' opposition fails to address the change in the legal conditions, and, instead, is entirely devoted to comparing the original plan with the current plan. *See* discussion *supra* Part III.B.i. At the hearing, Plaintiffs argued that the change in legal condition did not apply retroactively, so the district court was not divested of jurisdiction.

Notwithstanding, the Court is persuaded that the change in legal condition favors the dissolution of the injunction, as the congressional intent to exclusively bring these actions within the purview of the Court of Appeals essentially divests the district court of subject matter jurisdiction. *See* 49 U.S.C. § 46110(a). While this change on its own perhaps does not warrant the dissolution of the injunction, the change in factual circumstances certainly does. *See* discussion *supra* Part III.B.i.

## IV.   CONCLUSION

For the reasons set forth above, the Courts GRANTS IN PART AND DENIES IN PART Plaintiffs' request for judicial notice. Furthermore, Defendants' motion is GRANTED and the April 28, 2003 injunction is DISSOLVED. Finally, the orders to show cause issued on December 9, 2015 are discharged.

The Clerk shall close the cases.

IT IS SO ORDERED.

Dated: May 20, 2016

KANDIS A. WESTMORE
United States Magistrate Judge